UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
EVEREST NATIONAL INSURANCE CO.,     )
                                    )
    Plaintiff,                      )
                                    )
v.                                  )    No. 10-CV-10313-LTS
                                    )
BOSTON WATER AND SEWER COMMISSION, and )
SANTORELLI CONSTRUCTION, INC.,      )
                                    )
    Defendants.                     )
_____ )


ORDER ON DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

January 10, 2012

SOROKIN, M.J.

Currently pending are the Defendants Santorelli Construction, Inc. (Docket #26) and Boston Water and Sewer Commission's (Docket #28) Motions for Summary Judgment. For the following reasons, the motions are ALLOWED.

I.  **FACTUAL BACKGROUND**

The Parties are generally in agreement as to the underlying facts. The Plaintiff, Everest National Insurance Co., is a Delaware corporation with its usual place of business at 477 Martinsville Road, Liberty Corner, New Jersey. Docket #1 at ¶ 1. The Plaintiff insured the interest of 230 Commonwealth Avenue LLC ("the LLC") in the property at 230 Commonwealth Avenue and the interest of 232 Commonwealth Avenue Trust ("the Trust") in the property at 232 Commonwealth Avenue (collectively "the property owners"). Id. On December 29, 1977, the City of Boston Fire

1

Department gave permission to the then property owner at 232 Commonwealth Avenue, Donald E. Cote & Associates, to shut down the property's sprinkler system due to the system's state of disrepair. Id. at ¶ 9; Docket #28, Exhibit G at 1. The permit application stated that the sprinkler system would be shut off at the street. Docket #28, Exhibit G at 3. A four-inch fire pipe ("fire pipe") connected the water main in the street to the property. See Docket #33 at 4, ¶ 2. On January 6, 1978, the owners reported that the valve had been checked and sprinkler system had been shut off permanently. Docket #30 at ¶ 10. According to the Plaintiff's expert T.J. Klem and Associates ("Klem"), the shut down procedure likely involved closing two different valves. Docket #25 at 4. One valve was the gate valve in the basement at 232 Commonwealth that prevented water from entering the sprinkler system. Id. The second valve was a curb valve in the street that was closed to prevent water from entering the fire pipe. Id. This shutdown procedure was in accordance with industry standards at that time. Id. Until the incident at question, there had been no reported leaks involving the disabled sprinkler system since its shutdown. Id. at 5.

On July 6, 2009, Defendant Santorelli Construction, Inc. ("Santorelli") excavated and replaced sidewalk materials at 232 Commonwealth Avenue as part of its contract with the co-defendant, the Boston Water and Sewer Commission ("Commission"). Id. at ¶ 1. Santorelli first cut and removed the existing concrete. Id. at ¶ 4. Santorelli then ran a compactor over the excavated area for five minutes to smooth the surface before installing the new concrete. Id. at ¶¶ 5, 8; Docket #31 at 3, ¶¶ 5-6. Santorelli knew the work area was three-to-four feet above the fire pipe, but it did not operate the compactor any differently than it would have if no pipe had been present. Docket #31 at 4, ¶ 10.

On July 8, 2009, at 4:30 A.M., Commission personnel responded to a reported water leak

from the fire pipe. Docket #30 at ¶¶ 2,4. At the time, water was entering the basement at 232 Commonwealth Avenue through the flange connection between the sprinkler valve and the piping. Docket #27, Exhibit C at 3. There was no leak in the water main or sprinkler pipe. Docket #31 at 5, ¶ 16. At 8:30 A.M. that morning, Commission personnel excavated below the roadway to access the curb valve at the connection between the fire pipe and the water main. Id, at ¶ 5; Docket #33 at 4, ¶ 8. Excavation was necessary because this valve was not accessible from the roadway surface. Docket #30 at ¶ 6. Commission personnel discovered the curb valve in the open position and shut it closed using a specialized wrench. Docket #30 at 4-5, ¶¶ 8, 11. Examinations after the leak revealed the head of the fire pipe, located in the basement, was badly corroded and that the bolts there were in disrepair. Docket #27 at 6, ¶ 12. According to Klem, the condition of the bolts and the gate valve in the basement suggested that the flange connection alone was not capable of holding back water.[1] Docket #25 at 5.

After the leak, the Plaintiff reimbursed the LLC for $54,190.28 for damages to the LLC property from the water leak. Docket #1 at 3, ¶ 12. It also reimbursed the Trust for $107,150.00 for damage to the Trust property. Id. at ¶ 14. As a result of those payments, the Plaintiff became the subrogee to the LLC's and the Trust's rights and claims. Id.

The Water Use Regulations of the Commission, adopted on December 21, 2000, establishes that property owners own the entire fire pipe, extending from the property to the public water main

---

[1] Plaintiff's other expert Susan Freeman, a metallurgical engineer, did not reach the same conclusion as Klem. According to Freeman, the gate valve was closed and would have been able to stop water even if the curb valve between the fire pipe and water main was open. See Docket #25 at 31-32. Freeman opines that a surge of water was necessary for a leak at the flange connection. Id. at 32. While Freeman does suggest that the water leak was connected to the sidewalk repairs, she believes that water pressure applied during the repairs caused the leak and not opening the curb valve.

3

and including the control valve at the water main. Docket #30 at ¶ 11. Property owners are also responsible, at their own expense, to keep the fire pipe in good repair, free of leaks, and protected from frost and corrosion. Id. at ¶ 12.

## II. DISCUSSION

The Plaintiff filed its complaint on February 23, 2010, asserting negligence claims against the Commission and Santorelli for the damages stemming from the leak. Docket #1 at ¶¶ 11, 22. Plaintiff claims that the Commission breached its duty of ordinary care by opening the valve where the fire pipe connected to the water main underneath Commonwealth Avenue. Docket #33 at 7. It asserts that if the valve had not been opened, no water would have reached the building. Id. Plaintiff asserts that Santorelli breached its duty of ordinary care by not taking precautions when it excavated and replaced the sidewalk section since Santorelli knew the fire pipe was located below their work area. Docket #31 at 7. Plaintiff also claims that Santorelli's work may have caused separation at the flange connection between the sprinkler valve and the piping. Id.

The Commission asserts two arguments in support of its motion for summary judgment. First, it asserts that it owed the property owners no duty of care since the property owner owned, controlled, and maintained the fire pipe from 1977 through July 6, 2009.[2] Docket #29 at 3. The Commission claims that the property owner acknowledged its own duty to control the water pipe when it hired contractors to cut and cap the fire pipe in 2010, pursuant to the Water Use Regulations. Id. at 5-6. Second, the Commission asserts that there was no common law duty for it to dig up and

---

[2] While it is true that, pursuant to the Commission's Water Use Regulations, the property owners owned and controlled the fire pipe and were responsible for its maintenance from December 21, 2000, onwards, there is no evidence in the record as to who owned or controlled the fire pipe or as to who was responsible for its maintenance prior to that date.

4

inspect the fire pipe, even if an inspection would have revealed defects. Id. at 6. Since there was no duty of care and no duty to inspect the fire pipe, the Commission states it is entitled to a summary judgment.

Santorelli asserts three arguments in support of its motion for summary judgment. First, it asserts that it had no duty to maintain or perform upkeep on the pipes. Docket #27 at 5-6. Second, it argues that the Plaintiff cannot reasonably prove that Santorelli was the actual or proximate cause of the damage, since there is no evidence that anyone from Santorelli came near the opened valve. Id. at 6. Third, it states that the doctrine of *res ipsa loquitur* is not applicable to these circumstances, since the valve in question was in the middle of Commonwealth Avenue and not under the exclusive control and management of Santorelli. Id. at 8-9.

Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). Moreover, the Court is "obliged to []view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). Even so, the Court is to ignore "conclusory allegations, improbable inferences, and unsupported speculation." Sullivan v. City of Springfield, 561 F.3d 7, 14 (1st Cir. 2009) (quotation omitted).

Applicable Law and Legal Standards

Since the federal court has diversity jurisdiction in this matter, Massachusetts law applies. Reicher v. Berkshire Life Ins. Co. of Am., 360 F.3d 1, 4 (1st Cir.2004). In Massachusetts, four elements must be satisfied to assert a negligence claim: (1) a legal duty owed to the plaintiff by the defendant; (2) a breach of that duty by the defendant; (3) causation; and (4) actual loss by the plaintiff. Public Serv. Mut. Ins. v. Empire Comfort Sys., Inc., 573 F. Supp. 2d 372, 377 (D. Mass. 2008). In Massachusetts, the question of negligence is usually a factual question for the jury. Luz v. Stop & Shop, Inc. of Peabody, 348 Mass. 198, 203-04, 202 N.E.2d 771, 775 (1964). In this instance, the Plaintiff asserts that the Commission and Santorelli owed it the duty of ordinary care given the circumstances, and that both separately breached their duty.

Plaintiff's Negligence Claim Against Commission

In its Opposition to the Commission's Motion for Summary Judgment, the Plaintiff argues that the Commission breached its duty of ordinary care by opening the curb valve connecting the water main to the fire pipe. Docket #33 at 2. The Plaintiff assumes that the valve was closed in 1978 when the sprinkler system was shut down and that it remained closed up until the sidewalk work commenced. Because the Commission personnel needed to excavate several feet under the road and use a special wrench to close the valve, the Plaintiff believes a reasonable fact finder could find that only the Commission would have the ability to open the valve. Id. By opening up this valve, the Plaintiff states the Commission allowed water from the water main to enter the fire pipe and reach the failed sprinkler pipe flange, causing the water damage.

The Commission unquestionably owed a duty of ordinary care to the Plaintiff. Goldstein v Gontarz, 364 Mass. 800, 805 (1974). Nevertheless, the evidence presented by the Plaintiff fails to

raise a genuine issue of triable fact that the Commission breached its owed duty to the Plaintiff by opening the curb valve. To carry that burden, the Plaintiff needs to present evidence that is "sufficiently concrete to remove any inference which the jury might draw from it from the realm of mere speculation and conjecture." Alholm v. Town of Wareharm, 371 Mass. 621, 627, 358 N.E.2d 788, 792. The evidence presented by the Plaintiff does not carry that burden.

Although the Plaintiff asserts that the Commission opened the valve connecting the water main to the fire pipe, it does not provide any direct evidence that the Commission actually did so. The Plaintiff provides no evidence that the Commission excavated prior to or during the July 6, 2009, sidewalk repairs to reach the curb street valve. There is also no evidence permitting an inference that the Commission did open the valve; at the hearing, all parties agreed that the Commission is not the only entity who could dig in the area at issue; the valve was not under the Commission's exclusive control. Additionally, the property owners, not the Commission, own the entire fire pipe (including the valve) and are responsible for keeping the fire pipe in good repair, free of leaks, and protected from frost and corrosion. The Plaintiff also does not provide evidence that other persons could not access the specialized wrench used by the Commission to close the curb valve, in fact, Plaintiff's counsel conceded at a hearing on the present motions that the Commission is not the only entity to possess such a wrench. Finally, the Plaintiff does not provide any evidence that the street curb valve had not been opened after the 1978 shutdown but before the 2009 sidewalk repairs.[3] Instead, the Plaintiff refers to the 1978 shutdown report and Klem's report that no leaks

---

[3] While the Plaintiff's expert Klem says "The contractors should not have manipulated this valve without knowing exactly where the water line went and if it was damaged they should have noticed the proper authorities to prevent an incident like this from occurring[,]" neither the Plaintiff nor the experts have any evidence to support this conclusion.

7

had occurred since 1978. The assumption that the curb valve must have been closed, however, is undermined by the Plaintiff's second expert, Susan Freeman, who believes water could have flowed into the fire pipe and still not have leaked through the flange connection.

Without more evidence that the Commission opened the curb valve, the Plaintiff cannot demonstrate that a reasonable fact finder could infer that the Commission breached its duty of ordinary care to the Plaintiff. In light of the Plaintiff's failure to establish a breach of the duty of ordinary care, the Court must allow the Commission's motion for summary judgment.

<u>Plaintiff's Negligence Claim Against Santorelli</u>

In its Opposition to Santorelli's Motion for Summary Judgment, the Plaintiff states that Santorelli did not take the proper precautions before working with heavy tools such as sledgehammers and a mechanized compactor within four feet of the sprinkler pipe. Docket #31 at 7. According to the Plaintiff, performing such work without taking extra precautions constituted a breach of the ordinary duty of care owed to the Plaintiff. Plaintiff then asserts that a reasonable fact finder could find that, because there is no evidence of other changed circumstances, that Santorelli's work caused the separation at the flange connection. <u>Id.</u>

Plaintiff has provided no expert testimony indicating what extra precautions or remedial measures Santorelli should have taken prior to the work at issue. Neither of the Plaintiff's experts asserts that Santorelli's work should have been done differently or with more caution. Nor has Plaintiff offered any other evidence as to what precautionary actions Santorelli should have taken. At a hearing on the present motions, Plaintiff's counsel stated that the appropriate standard of care in such circumstances was within the common knowledge and experience of jurors. The Court disagrees and finds that what extra precautions, if any, a contractor is required to undertake in a

situation like that at issue is generally beyond the scope of an average person's knowledge. Thus, Plaintiff was required to offer expert testimony to establish the applicable standard of care. Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 402, 788 N.E.2d 522, 536 (2003) ("The test for determining whether a particular matter is a proper one for expert testimony is whether the testimony will assist the jury in understanding issues of fact beyond their common experience."). Given the burden on the non-moving party, the Plaintiff's failure to establish the appropriate standard of care requires the allowance of Santorelli's motion for summary judgment.

Even if the appropriate standard of care applicable here was within the scope of an average person's knowledge, the Plaintiff has failed to establish causation. At the hearing on the present motions, Plaintiff's counsel suggested that Santorelli's duty of care required Santorelli to contact the Commission and inquire as to the status of the pipes prior to commencing its work. However, as conceded by Plaintiff's counsel, if Santorelli had contacted the Commission, the Commission would have informed Santorelli that the pipe was closed. Hence, even had Santorelli breached its duty of care to the property owners, the breach did not cause the property owner's damages.

### III. CONCLUSION

For the foregoing reasons, the Defendants' Motions for Summary Judgement (Docket #26 and #28) are ALLOWED.

                                                              /s/ Leo T. Sorokin
                                               UNITED STATES MAGISTRATE JUDGE